In re TEEFY PONTIAC CO. also d/b/a Teefy AMC/Jeep, Debtor.

GENERAL MOTORS ACCEPTANCE CORPORATION, Plaintiff,

v.

TEEFY PONTIAC COMPANY, also d/b/a Teefy AMC/Jeep, Defendant.

Bankruptcy No. 81–02569G.
Adv. No. 81–1254G.

United States Bankruptcy Court,
E. D. Pennsylvania.

Jan. 13, 1982.

Margaret Mary King, Owens, Whiteman & Bankes, Philadelphia, Pa., for plaintiff, General Motors Acceptance Corp.

Donald M. Collins, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for debtor/defendant, Teefy Pontiac Co. d/b/a Teefy AMC/JEEP.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue presented is whether the plaintiff has perfected, nonavoidable security interests in the automotive parts inventory and in the dealership assets and equipment of the debtor which secure the debt owed to the plaintiff under a wholesale security agreement by which the plaintiff financed the debtor's purchase of cars for sale or lease by its dealership. We conclude that the plaintiff has such perfected and nonavoidable security interests and that those security interests secure the debt owed to the plaintiff by the debtor under the wholesale security agreement.

The facts of the instant case are as follows:[1] Teefy Pontiac Company ("the debtor") was in the business of selling and leasing new and used cars for almost 50 years before it filed a petition for a reorganization under chapter 11 of the Bankruptcy Code ("the Code") on July 2, 1981. To finance that car dealership, the debtor entered into several agreements with General Motors Acceptance Corporation ("GMAC"). The Wholesale Security Agreement, executed by the debtor and GMAC on May 21, 1976, provided that GMAC would advance money to car manufacturers on behalf of the debtor for the acquisition of new and used cars and that GMAC would have a security interest in all such cars and the proceeds thereof for the money so advanced. On October 18, 1979, and again on January 20, 1981, the debtor and GMAC executed security agreements whereby GMAC obtained a security interest in the debtor's automotive parts and accessories inventory and the proceeds thereof ("parts inventory"). That security interest was duly perfected on January 26, 1981. On October 18, 1979, the parties also executed a security agreement whereby GMAC obtained a security interest in the debtor's dealership assets and equipment, machinery and shop equipment, parts and accessory equip-

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

ment, furniture and fixtures, signs and small tools and miscellaneous supplies and the proceeds thereof ("the equipment"). That security interest was duly perfected on October 22, 1979.

On September 21, 1981, GMAC filed the instant complaint seeking, *inter alia*, relief from the automatic stay to permit it to foreclose its security interests in the parts inventory and the equipment of the debtor. The parties stipulated to several facts, including (1) that the value of the parts inventory is between $100,000.00 and $130,000.00 and (2) that the property in question is not necessary to the debtor's reorganization because the debtor's business has terminated. At the trial held herein, the witness for GMAC stated that the debt due to GMAC was $129,000.00 excluding attorneys' fees and the costs incurred by it in selling the debtor's inventory.[2]

In its answer and at the trial held herein, the debtor raised as defenses to the complaint: (1) that the security interest of GMAC in the parts inventory of the debtor did not secure the debt owed by the debtor to GMAC for the financing of new GM cars because there were no documents to support those transactions as required by the security agreement for the parts inventory; and (2) that the security interest of GMAC in the debtor's equipment is voidable by the debtor pursuant to § 544 of the Code.

With respect to the debtor's first defense, the relevant language of the security agreement in question provides that GMAC shall have a security interest in the parts inventory:

> In consideration of GENERAL MOTORS ACCEPTANCE CORPORATION, hereinafter called GMAC, extending credit to Teefy by or through accepting, purchasing, discounting or otherwise acquiring any instrument or document, including (Without limiting the generality of the foregoing) any promissory note, draft,

trust receipt or other form of security document, hereinafter collectively referred to as the obligation, executed in connection with GMAC financing of new or used products under the GMAC Wholesale Plan for the Dealer.

The debtor admits that the above language gives GMAC a security interest in the parts inventory to secure the financing by GMAC of used cars and cars acquired from the American Motors Corporation ("AMC") because that financing was evidenced by certain written security documents. However, the debtor asserts that the above language does not give GMAC a security interest in that property to secure the financing of new General Motors ("GM") cars because that financing was not evidenced by any written security documents. Instead, that financing was done exclusively by computer transactions between GMAC and GM.

We disagree with the debtor's assertion because we find that it was the agreement of the parties that any debt owed to GMAC on account of the financing of any car under the wholesale security agreement was to be further secured by the security interest given to GMAC in the debtor's parts inventory. This finding is evident from the testimony presented at the trial herein. The witness for GMAC stated that the security agreement in question (which was executed in 1979 and again in 1981) was intended to give GMAC additional security for all of its financing of the debtor's car dealership. The president of the debtor conceded that GMAC had demanded such additional security and admitted that the majority of the debtor's business was in GM cars (5 out of 6 cars sold or leased by the debtor were GM cars). In addition, the debtor's president testified that, since 1976, under the terms of the parties' wholesale floor plan financing arrangement, GMAC would provide financing for GM cars by computer transactions between GMAC and

---

**2.** As part of the stipulation resolving the other issues raised by the instant complaint, the parties agreed to a modification of the stay to permit GMAC to arrange for the sale of the debtor's GM parts inventory to General Motors Parts Division and to allow for the payment to GMAC of the costs and expenses incurred by it in preparing, packing and transporting those parts.

GM and that the debtor would receive evidence of that financing through monthly statements. The debtor at no time objected to that method of financing and never indicated (until the instant proceeding) that it understood the additional security agreement not to secure the majority of the debt owed by it to GMAC. Furthermore, we conclude that the Wholesale Security Agreement executed by the parties in 1976, which grants a security interest to GMAC in all of the debtor's cars, is itself a "document ... executed in connection with GMAC financing of new or used products under the GMAC Wholesale Plan for the Dealer" so as to be within the scope of the security agreement covering the debtor's parts inventory. In light of the above, we conclude that the security interest granted to GMAC in the debtor's parts inventory secures the debt owed to GMAC for the financing of GM cars, as well as AMC cars and used cars.

With respect to the debtor's second defense, we deduce that GMAC's security interest in the debtor's equipment is not avoidable pursuant to § 544(a) of the Code. That section provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

Because the security interest in question was duly perfected by GMAC before the debtor filed its petition for a reorganization, that security interest is superior to, and thus not avoidable by any hypothetical lien creditors or any bona fide purchaser referred to in § 544(a). *See* Pa.Stat.Ann. tit. 12A, §§ 9–301, 9–312 and 9–313 (Purdon).

Nonetheless, the debtor argues that, because the security agreement covering the debtor's equipment contains a subordination clause, the security interest granted thereby is avoidable by the debtor pursuant to § 544(a). The subordination clause in question provides:

Any rights created hereunder in favor of GMAC are subordinated to the rights of the intended purchaser of Teefy, it being the intention of the parties that in the event of closing of the purchase, this security agreement shall not prevent the passage of clear title to said purchaser.

The witness for GMAC testified that the above language was included in the security agreement because the debtor then had a potential purchaser for its entire business. GMAC therefore contends that, because that particular sale was not consummated, the subordination clause is no longer of any effect. The debtor asserts, on the other hand, that the language of that clause is broad and was intended to cover *any* sale of the debtor's business. We agree with the debtor that that clause by its language is not limited to any particular time or to any particular purchaser. Even so, we conclude that the subordination clause does not enable the debtor, through § 544(a), to avoid GMAC's security interest. We so determine because that clause provides that GMAC's security interest is subordinate to the rights

"of the intended *purchaser of Teefy.*" We interpret that language to mean an intended purchaser of the *entire business* of the debtor *not* a lien creditor or a purchaser of only the real property of the debtor.[3] There never having been a sale of the debtor's entire business, we conclude that GMAC's security interest in the debtor's equipment is not avoidable pursuant to § 544(a) of the Code.

In light of the above, we determine that GMAC is entitled to relief from the stay pursuant to § 362(d)(2) of the Code to permit it to foreclose on the parts inventory and equipment of the debtor in which it has valid and nonavoidable security interests.

Robert H. Levin, Philadelphia, Pa., for Kardon Industries, Inc.

Herman P. Weinberg, Philadelphia, Pa., for debtor.

---

**3.** There was insufficient evidence presented at the trial herein to establish what real property, if any, the debtor did own.